# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VINCENT BYNUM,** *Plaintiff* | **CIVIL ACTION** |
| v. | |
| **OFFICIAL OFFICER MURRAY** *et al.*, *Defendants* | **No. 18-5395** |

## MEMORANDUM

PRATTER, J.                                                                                          JULY 6, 2020

Vincent Bynum alleges that Corrections Officers Murray, Brice, and Pavalko used unconstitutionally excessive force when they beat him, sprayed him with pepper spray, and placed him in restraints. The Officers move for summary judgment, claiming that Mr. Bynum failed to exhaust his administrative remedies.

For the reasons that follow, the Court denies the motion for summary judgment

## BACKGROUND

### I. The Allegations[1]

Mr. Bynum claims that while he was in his cell at the Berks County Jail, another inmate urinated "down [his] pipe" at what the inmate said was Officer Murray's request. Compl. 3. Wanting to get out of his cell, Mr. Murray had a nurse come examine him. He then refused to go back in his cell. At that time, Officers Murray, Brice, and Pavalko allegedly punched, kicked, and sprayed pepper spray at Mr. Bynum. The Officers then handcuffed Mr. Bynum and put him in the shower where they made him strip, placing his clothes on the wet shower floor covered in pepper spray.

---

[1] Mr. Bynum did not file a response to the motion for summary judgment. Therefore, these background facts are drawn solely from Mr. Bynum's complaint.

1

After forcing Mr. Bynum into the shower, the Officers handcuffed his hands behind his back and placed him back in his cell with no clothes. Mr. Bynum did not take a shower for three days after the incident and claims that he could taste pepper spray in his hair and on his body.

Mr. Bynum also alleges that medical staff did not see him for any injuries. Although he did not have any cuts, he claims to have had bruising from the Officers' actions. Mr. Bynum states that the medical staff thought it was funny that he was begging for help while he was sprayed with pepper spray.

## II. The Grievance System

The Berks County Jail System ("BCJS") maintains an inmate grievance system through which inmates may file grievances, including those alleging excessive force. The processes of the inmate grievance system are explained the BCJS inmate handbook.[2] The handbook instructs that the prison will generally answer an inmate's grievance within 15 days, but if the grievance cannot be answered in that time, the inmate will be sent a notice and the time for a response to be issued may be extended by 10 days. If an inmate does not receive a response to his original grievance within 25 days, he may file an appeal.

According to the BCJS inmate grievance log, Mr. Bynum filed a timely grievance on October 15, 2018 complaining of the Officers' actions. A response denying the grievance was issued 42 days later on November 26, 2018. Mr. Bynum did not appeal either the lack of a timely response to his grievance or the November 26, 2018 response. Mr. Bynum then filed this action on December 13, 2018.

---

[2] Mr. Bynam acknowledged receipt of a copy of the BCJS inmate handbook on March 19, 2018.

## LEGAL STANDARD

A court may properly grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact finder could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks,* 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson,* 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson,* 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the Court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). "Merely because a non-moving party is proceeding pro

3

se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017) (quoting *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000)). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[3] *Celotex,* 477 U.S. at 322.

## DISCUSSION

In support of their motion for summary judgment, the Officers argue only that Mr. Bynum failed to exhaust his administrative remedies before filing this lawsuit. Whether Mr. Bynum exhausted his administrative remedies "constitutes a preliminary issue for which no right to a jury trial exists." *Small v. Camden Cty.*, 728 F.3d 265, 271 (3d Cir. 2013). The burden is on the Officers to prove that Mr. Bynum failed to exhaust his administrative remedies. *See id.* ("The Court correctly placed the burden on Defendants to prove non-exhaustion.").

The Prison Litigation Reform Act ("PLRA") commands that a prisoner cannot bring an action "with respect to prison conditions under section 1983 . . . or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[E]xhaustion in cases covered by § 1997e(a) is . . . mandatory." *Id.* at 524 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

---

[3] Here, Mr. Bynum has not responded to the Officer's motion for summary judgment even though the Court ordered him to respond on two separate occasions. Nonetheless, the Court may not grant the motion solely because it is uncontested. *See* E.D. Pa. Civ. R. 7.1(c) ("In the absence of timely response, the motion may be granted as uncontested except as provided under Fed.R.Civ.P 56."). Accordingly, the Court evaluates the motion for summary judgment on the merits.

4

Just as a prisoner must comply with the procedures set forth in his prison's grievance system, "[n]o less must prisons comply with the demands of the system they created." *Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019). Accordingly, our court of appeals has unambiguously held that "*as soon as* a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." *Id.* (emphasis added).

Here, Mr. Bynum filed a grievance on October 15, 2018. According to the BCJS inmate handbook, the prison had 15 days to answer. If the prison could not provide an answer in that time, the prison was to provide Mr. Bynum with a notice, and the time for the prison to respond may have been extended by an additional 10 days for a total of 25 days.

25 days passed after Mr. Bynum filed his grievance and the prison did not issue an answer. "At that moment he obtained the right to come into federal court." *Id.* at 366.

The fact that the BCJS grievance procedure allows inmates to file an appeal if they do not receive a response within 25 days does not change the undisputed fact that the prison failed to respond in the time allotted by its own procedure. *See id.* ("We need not consider the contention . . . that [plaintiff] was required under the policy to file his secondary appeal prior to the moment when he actually received a copy of the Facility Manager's decision on his first appeal.").[4] Such a failure to timely respond triggered administrative exhaustion under the plain language of

---

[4] The *Shifflett* decision also specifically refers to a prison's failure to timely respond "to a properly submitted grievance *or* appeal," providing further support for the conclusion that an appeal is not necessary if a prison does not respond at the initial grievance stage. 934 F.3d at 356 (emphasis added).

*Shifflett*.[5] Accordingly, the Officers have not met their burden to demonstrate that Mr. Bynum failed to exhaust his administrative remedies before filing this lawsuit.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is denied. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[5] The prison eventually denied Mr. Bynum's grievance 42 days after it had been submitted. This untimely denial does not change the fact that "as soon as" the prison failed to respond to Mr. Bynum's grievance "within the time limits prescribed by its own policies," the prison "made its administrative remedies unavailable" and Mr. Bynum had "fully discharged the PLRA's exhaustion requirement." *Shifflett*, 934 F.3d at 356.